**FILED**

APR 17 2008

Clerk, U.S. District and
Bankruptcy Courts

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### JUDICIAL DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAWRENCE WILLIAMS, | § | Case: 1:08-cv-00681 |
| | § | Assigned To : Kennedy, Henry H. |
| Petitioner/Plaintiff, | § | Assign. Date : 4/17/2008 |
| | § | Description: Habeas Corpus/2255 |
| vs. | § | |
| | § | |
| ALBERTO GONZALES, ATTORNEY | § | |
| GENERAL OF THE "UNITED STATES | § | |
| OF AMERICA," | § | JUDICIAL NOTICE |
| | § | RULE 201(d) |
| and | § | |
| | § | |
| HARLEY G. LAPPIN, DIRECTOR OF | § | |
| THE FEDERAL BUREAU OF PRISONS, | § | |
| | § | |
| Respondnet(s)/Defendant(s) | § | |
| | § | |
| | § | |

BEFORE THE HONORABLE COURT:

COMES NOW, Lawrence Williams, in want of counsel, pro-se, accused
in the above captioned cause, and as Petitioner for the instant
motion to request "Judicial Notice" in the nature of Rule 201(d)
of the Federal Rules of Evidence, shows this court as follows:

1.

That the undersigned requests the court to take "Judicial Notice"
of a certain excerpt from the United States Government's publication
which is specifically "The Report of the Interdepartmental Committee
for the Study of Jurisdiction over Federal Areas within the [several
sovereign] states."

/////

/////  - 1

2

2.

That the undersigned requests the court to take "Judicial Notice" of the statutes of the State of Texas, without limitations, at Chapter 1 §1, et. seq.

3.

That the undersigned requests the court to take "Judicial Notice" without limitations, to Article I, Section 8, Clause 17, in amendment to the Constitution of the United States.

4.

That the undersigned requests the court to take "Judicial Notice" of the Government's charging instruments whereon, the government fails to describe a 'locus in quo,' wherein the alleged violation conduct of the undersigned was committed; which is within the legislative, territorial or admiralty jurisdiction of the Federal United States, corporation (28 U.S.C. §3002 (15)(A)).

5.

That the undersigned requests the court to take "Judicial Notice" of the self-evident fact that the government's charging instrument(s) fail to allege or charge the undersigned with an alleged violation of the Federal Commerce Clause which is in he sine qua non to the legitimate application of the federal statutory provisions under which the undersigned was charged, with out nexus to the former, there can no operation of the latter.

6.

That the undersigned submits the following for judicial review by the court, citing from the government's report entitled: **Jurisdiction Over Federal Areas Within The States**, subtitled; "Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the States."

7.

The Constitution of the United States at Article I, Section 8, Clause 17:

> "The Congress shall have power...to exercise exclusive Legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, be cession of particular states, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like authority over all places purchased by the consent of

the legislature of the State in which the same shall be,
for the erection of forts, magazines, arsenals, dock-yards
and other needful buildings, and to make all laws which
shall be necessary and proper for carrying into execution
the foregoing powers and all other powers vested by this
Constitution in the Government of the United States, or in
any department or office thereof....

The significance of the foregoing in the above styled action is
the purported plaintiff herein cannot demonstrate that the court has
jurisdiction to adjudicate the matter.  In support of the said arg-
ument the undersigned refers the court to a publication entitled
JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES, and subtitled Report
of the Interdepartmental Committee for the Study of Jurisdiction over
Federal Areas within the States, which was published in two volumes
by the United States printing office.  Excerpts from the said public-
ation are as follows:

/////

/////  - 3

"The White House,
Washington, April 27, 1956

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope that you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials, Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.

Sincerely,
Dwight D. Eisenhower.

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D. C."

and

## LETTER OF ACKNOWLEDGMENT

The White House
Washington, July 8, 1957.

Dear Mr. Attorney General:

I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.

In view of the fact that the work of the Committee is completed, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federal-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.

Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

Sincerely,
Dwight Eisenhower

The Honorable Herbert Brownell, Jr.,
The Attorney General,
Washington, D. C.

## LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your commendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this Committees report and the full implementation of its recommendations will provide a basis for reversing in many areas the swing of "the pendulum of power" * * * from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also especially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

## LETTER OF SUBMISSION

*INTERDEPARTMENTAL, COMMITTEE FOR THE STUDY OF OVER FEDERAL
AREAS WITHIN THE STATES JURISDICTION*
June 17, 1957.

Dear Mr. Attorney General:

     With the encouragement of the President, the understanding aid of you and the heads of the other Federal agencies represented on the Committee, and the invaluable assistance of the Attorneys General of the several States and of the principal law officers of nearly all Federal agencies, the Committee now has completed, and herewith submits, the final portion of its report, subtitled "Part II, A Text of the Law of Legislative Jurisdiction."

     This "Part II" supplements the portion of the Committee's report which you transmitted to the President on April 27, 1956. With its submission the work assigned to the Committee has been completed, and it is recommended that the Committee be dissolved.

      Respectfully submitted,
      PERRY W. MORTON,
      Assistant Attorney General (Chairman).

      ROBERT DECHERT,
      General Counsel, Department of Defense (Vice Chairman).

      HENRY H. PIKE,
      Associate General Counsel, General Services Administration (Secretary).

      ARTHUR B. FOCKE,
      Legal Advisor, Bureau of the Budget.

      ELMER F. BENNETT,
      Solicitor, Department of the Interior.

      ROBERT L. FARRINGTON,
      General Counsel, Department of Agriculture.

      PARKE M. BANTA,
      General Counsel, Department of Health, Education, and Welfare.

      GUY H. BIRDSALL,
      General Counsel, Veterans. Administration.

# PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet The basic purpose for which the Committee was founded was to find means for resolving the problems arising out of jurisdictional status of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problems (a total of 33 agencies), from State Attorneys General, and from numerous other sources, prepared a report entitled Jurisdiction over Federal Areas Within the States Part I, The Facts and Committee Recommendations. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State law, and in Federal agencies' practices, designed to eliminate existing problems arising out of legislative jurisdiction. It included two appendices.

The Committees research involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statues for the various purposes for which federally owned land is used. This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in appendix B of Part I.

The major conclusions of the Committee, set out in Part I of - the report, which, of course, are applicable only to the 48 States to which the Committees study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the States' Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case the Federal Government should not receive or retain any of the States' legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts and opinions rendered by governmental legal officers, Federal and State, interpretative of situations affected by legislative jurisdiction.

Recommendations made by the Committee, based on the conclusions indicated above and on certain subsidiary findings, now constitute the policy of the Executive branch of the

Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation.

In the course of its study the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many. -- In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with over lapping State laws, the ownership and operation by the Federal Government of areas within the States gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees, the Jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By constitutional consent. -- This special jurisdiction which is often possessed by the United States stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of government of the United States, and like authority over all places acquired by the Government, with the consent of the State involved, For various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause the United States has acquired over several thousand areas within the States some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government ordinarily are reserved to the States.

By Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over certain areas in connection with the admission of State into the Union. A third means for transfer of legislative jurisdiction now

has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main, however, the characteristics of a legislative Jurisdiction status are the same no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.., in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries, and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas the benefits of the laws and judicial and administrative processes of the State relating to adoption, the probate of wills and administration of estates, divorce, and many other matters. Police, fire-fighting, notarial, coroner, and similar services performed by or under the authority of a State may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either,, except in some minor particulars.

Exercise as to crimes. -- With respect to crimes occurring within Federal enclaves the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases the specific provision, of course, supersedes the Assimilative Crimes Act.

Exercise as to civil matters. -- Federal legislation has been enacted authorizing the

extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are located. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations; it has allowed taxation of leasehold interests in Federal property including property located on Federal enclaves; and it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE OF INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction has been partially filled by the courts, through extension to these areas of a *Rule of International Law* that when one sovereign takes over territory of another the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
## THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

Constitutional Consent. -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a constitutional provision such as Clause 17 was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such a provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government, it is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of government and over federally owned areas within the States defended the inclusion in the Constitution of a provision such as Article I, Section 8, clause 17. And in United States v. Railroad Bridge Co., 27 Fed. Cas. 686, 693, No. 16,114 (C. C. N. D. Ill., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued no transfer of jurisdiction can take place.

State cession. -- However, in Fort Leavenworth *R.R. v. Lowe*, 114 U. S. 525 (1885), the United States Supreme Court sustained the validity of an act of Kansas ceding to the

United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p. 540):

> We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether represented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States, and, therefore, their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country. * * * In their relation to the general government, the States of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defect or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States.

Had the doctrine thus announced in Fort Leavenworth *R. R. v. Lowe*, supra, been known at the time of the Constitutional Convention, it is not improbable that Article I, Section 8, Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method for transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal ......

Federal Reservation. — In Fort Leavenworth *R. R. v. Lowe*, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p. 526):

The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made.

Almost the same language was used by the Supreme Court of Kansas in *Clay v. State*, 4 Kan. 49 (1866), and another suggestion - of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, *Langford v. Montieth*, 102 U. S. 145 ( 1880), in which it was held that when an act of Congress admitting a State into the Union provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory, the new State government has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over certain areas was to be reserved to the United States" in view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights with respect to the use, protection, and disposition of its property.

# NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION TO FEDERAL GOVERNMENT

Constitutional Consent --The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms only with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the States Jurisdictional integrity against Federal encroachment.

State cession or Federal reservation. -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative juris-diction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the time statehood is granted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While, under the second method of vesting legislative jurisdiction in the Federal *Government,* the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

# NECESSITY OF FEDERAL ASSENT

Express Consent Required by R. S. 355.-- Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R. S. 355. While this amendment in terms specifies requirement for formal Federal acceptance prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The United States Supreme Court, in *Adams v. United States*, 319 U. S. 312 (1943), in the course of its opinion said (pp. 314-315):

Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain *concurrent* jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their view's are entitled to great weight in its interpretation. * * * Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken.

Former Presumption of Federal acquiescence in absence of dissent. -- Even before the enactment of the 1940 amendment to R. S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent Prior to the 1940 amendment to R. S. 355, However, it was not essential that the consent of the Federal *Government* be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction such jurisdiction passed automatically to the Federal 'Government without any action having to be taken by the United                                                                                           States.
However, the presumption would not operate where Federal action was taken demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In Fort Leavenworth *R. R. R. v. Lowe*, supra, in which a transfer of legislative jurisdiction by means of a State cession statute was approved for the first time, the court said (p. 528) that although the Federal Government had not in that case requested a cession of *jurisdiction*, nevertheless, "as it conferred a benefit, the acceptance of the act is to be presumed in the *absence* of any dissent on their part." See also *United States v. Johnston*, 58 F. Supp. 208, aff'd., 146 F. 2d 268 (C. A. 9, 1944), cert. den., 324 U. S. 876; 38 Ops. A. G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In *Yellowstone Park Transp. Co. v. Gallatin County*, 31 F. 2d 644 (C. A. 9, 1929), cert. den., 280 U. S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also *Columbia River Packers, Ass'n v. United States*, 29 F. 2d 91 (C. A. 9, 1928); *United States v. Unzeuta*, 281 U. S. 138 (1930).

Presumption in transfers by constitutional consent.-- Until recent years, it was not clear *but* that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution, would under all circumstances serve to transfer legislative jurisdiction to the

Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17 In *United States v. Cornell*, 25 Fed. Cas. 646, No 14,867 (C. C. D. R. I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of a State consent statute was not mentioned as an essential ingredient to the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (P. 648):

> The constitution of the United States declares that congress shall have power to exercise "exclusive legislation" in all "cases whatsoever" over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted. [Italics added.]

As late as 1930, it was stated in *Surplus Trading Co. v. Cook*, 281 U. S. 647, that (p. 652):

> It long has been settled that where lands for such a purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the State passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction. [Italics added.]

The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be selfexecuting where the conditions specified in that clause for the, transfer of jurisdiction have been satisfied.

In *Mason Co. v. Tax Comm'n*, 302 U. S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in Fort Leavenworth *R. R. v. Lowe*, supra, to transfers pursuant to Article I, Section 8, Clause 17, of the Constitution. The court said (p. 207):

> Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. * * *

What constitutes dissent. — Only in a few instances have the courts indicated what may constitute a "dissent" (*See Fort Leavenworth R. R. v. Lowe*, supra) by the Federal Government from a State's proffer of legislative jurisdiction. In *Mason Co. v. Tax Comm'n*,

supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the latter's enactment of a consent statute. In a State case (*International Business Machines Corporation v. Ott*, 230 La. 666, 89 So. 2d 193 (1956)), use by the Federal installation of similar State services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In *Atkinson v. State Tax Commission*, 303 U. S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in the Federal area was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

## ~ CRIMINAL JURISDICTION ~

*Right of Defining and Punishing For Crimes:* Exclusive Federal Jurisdiction. -- Areas over which the Federal Government has acquired exclusive legislative jurisdiction are subject to the exclusive criminal jurisdiction of the United States. *Bowen v. Johnston*, 306 U. S. 19 (1939); *United States v. Watkins*, 22 F. 2d 437 (N. D. Cal., 1927). That the States can neither define nor punish for crimes in such areas is made clear in the case of In re Ladd, 74 Fed. 31 (C. C. N. D. Neb., 1896), (p. 40):

> * * * The cession of jurisdiction over a given territory takes the latter from within, and places it without, the jurisdiction of the ceding sovereignty. After a state has parted with its political jurisdiction over a given tract of land, it cannot be said that acts done thereon are against the peace and dignity of the state, or are violations of its laws; and the state certainly cannot claim jurisdiction criminally by reason of acts done at places beyond, or not within, its territorial jurisdiction, unless by treaty or statute it may have retained jurisdiction over its own citizens, and even then the jurisdiction is only over the person as a citizen. * * *

The criminal jurisdiction of the Federalize Government extends to private lands over which legislative jurisdiction has been vested in the Government, as well as to federally owned lands. *United States v. Unzeuta*, supra; see also *Petersen v. United States*, 191 F. 2d 154 (C. A. 9, 1951), cert. denied 342 U. S. 885. Indeed, the Federal Government's power derived from exclusive legislative jurisdiction over an area may extend beyond the boundaries of the area, as may be necessary to make exercise of the Government's jurisdiction effective; thus, the Federal Government may punish a person not in the exclusive jurisdiction area for concealment of his knowledge concerning the commission of a felony within the area. *Cohens v. Virginia*, 6 Wheat. 264, 426-429 (1821).    In *Hollister v. United States*, 145 Fed. 773 (C. A. 8, 1906), the court said (p. 777):

Instances of relinquishment and acceptance of criminal jurisdiction by state

Legislatures *and* the national Congress, respectively, over forts, arsenals, public buildings, and other property of the United States situated within the states, are common, and their legality has never, so far as we know, been questioned.

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crimes occur on areas as to which legislative *jurisdiction* has been vested in the Federal Government. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of *United States v. Tully*, 140 Fed. 899 (C. C. D. Mont., 1905). Tully had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (id. p. 905):

> It is unfortunate that a murderer should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be discharged may furnish a text for the thoughtless or uninformed to say that a murderer has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment. * * · These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgment, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State, offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such of offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality

to such an area would be inconsistent with Federal exclusive jurisdiction.

Concurrent Federal and State criminal jurisdiction.--There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a *crime* has been committed, in an area over which the United States and a State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. *Grafton v. United States*, 206 U. S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for that crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal law, the defendant may be punished under each of them. *Hebert v. Louisiana*, 272 U. S. 377 (1922). (p.382):

It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, *Barron v. Baltimore*, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority., ,

It is well settled, of course, that where two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well stated in *Mail v. Maxwell*, 107 Ill. 554 (1883), (p. 561):

Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however.

Law *enforcement* on areas of exclusive or concurrent jurisdiction. -- The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriffs and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce rules made by the General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and, if it is deemed desirable, to extend to such property the applicability of regulations governing property promulgated by the General Service-

Administration  The General Services Administration is authorized by the same statute to utilize the facilities of existing Federal law-enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of the Interior required protection for an installation housing important secret work, the General Services Administration was without authority to place uniformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect 16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service) conferring any special authority on such guards. They are not peace officers with the usual powers of arrest; and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards, unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no more authority than other private individuals so far as making arrests is concerned.

State and local officers may, by special Federal statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

Partial jurisdiction. -- In some instances States in granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently, by themselves as well as by the Federal Government, criminal jurisdiction over the area, In instances of complete State retention of criminal jurisdiction. whether with respect to all matters or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters the rights of all parties are, of course, determined with respect to such matters according to the rules of law generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

State criminal jurisdiction retained. -- State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not acquired exclusive legislative jurisdiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U. S. C. 480), has not accepted the jurisdiction proffered

by the statutes of many States, and the vast majority of Federal forest lands are held by the Federal Government in a proprietorial status only.

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the Court in the above styled action. Some of which are:

1. Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place ?

   a.   If so, when?

   b.   If so, to what extent?

2. Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

   a.   Was the Grand Jury informed that the locus in quo, as described by the government, not within the legislative, territorial or admiralty jurisdiction of the United States?

   b.   Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3. Did the federal government establish on the record that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

   a.   Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substances Act is Commerce?

   b.   Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

21

by the statutes of many States, and the vast majority of Federal forest lands are held by the Federal Government in a proprietorial status only.

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the Court in the above styled action. Some of which are:

1.    Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place ?

      a.    If so, when?

      b.    If so, to what extent?

2.    Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

      a.    Was the Grand Jury informed that the locus in quo, as described by the government, not within the legislative, territorial or admiralty jurisdiction of the United States?

      b.    Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3.    Did the federal government establish on the record that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

      a.    Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substances Act is Commerce?

      b.    Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

3.   7th Amendment:  In suits of common law, where the value in con-
troversy shall exceed twenty dollars, the right to trial by jury shall
be preserved, and no fact tried except by jury.

4.    Title 18 U.S.C.A. Sect. 1621 "Perjury" whoever

(1)  having taken an oath before a competent tribunal, officer,
or person, in any case in which a law of the United States authorizes
an oath to be administered, that he will testify, declaration, de-
position, or certificate by him subscribed, is true, willfully and
contrary to such oath states or subscribes any material matter which
he does not believe to be true; or,

(2)   in any declaration, certificate, verification, or statement
under penalty of perjury as perjury as permitted under Section 1746
of Title 28, United States Code, willfully subscribes as true any mater-
ial matter which ho does not believe to be true; is guilty of perjury
and shall, except otherwise expressly by laws, be fined under this title
or imprisoned not more than five years, or both.  This section is applic-
able whether the statement of subscription is made within or without
the United States.  See:  18 U.S.C. 1622, 18 U.S.C. 1623, and 18 U.S.C.
1001.

5.    "Perjury of Oath of Office"  Perjury; in for judgmental law, the
willful assertion as to a matter of fact, opinion, belief or knowledge,
made by a witness in a judicial proceeding as part of his or her ev-
idence, either upon oath or in any form allowed by law to be substituted
for an oath or in any form allowed by law whether such evidence is
given in open court, or in affidavit, such assertion being material
to the issue or point of inquiry and known to such witness to be false.
Perjury is a crime committed when a lawful oath is administered, in
some judicial proceeding, to a person who swears willfully, and falsely,
in matters material to the issue or point in question.  (Reference
Gatewood v. State, 15 MD. App. 314, 290 A.2d 551, 553; F.R.C.P. Rule
9(b), 12(d)(1), (2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349,
14th Amendment U.S. Constitution.

6.    F.R.C.P. Rule 56(e):  Form of Affidavits; further testimony;
defense required; supporting and opposing affidavits shall be made on
personal knwoledge, shall set forth such facts as would be admissable
in evidence, and shall show affirmatively that the affiant is com-
petent to testify to the matters stated herein.  Sworn or certified
copies of all papers or parts thereof referred to in an affidavit

///// - 23

shall be attached thereto and served therewith.  The court may permit
affidavits to be supplemented or opposed by depositions, answers to
to interrogatories, or further affidavits.  When a motion for summary
judgment is made and supported as provided in this rule, an adverse
party may not rest upon the mere allegations or denials of his pleading,
but his response, by affidavits or as otherwise provided in this rule,
must set forth specific facts showing that there is a genuine issue
for trial.  If he does not so respond, summary judgment, if appropriate,
shall be entered against him.

7.    Stare Decisis:  Policy of courts to stand by precedent and not
to disturb settled point, **Neff v. George**, 364 Ill. 306, 4 N.E.2d 388,
390, 391.  Doctrine that, when a court has once laid down a principal
of law as applicable to a certain state of facts; regardless of whether
parties and property are the same.  **Horne v. Moody Tex Civ.**, App., 146
S.W.2d 505, 509, 510.  Under doctrine a deliberate or solemn decision
of court made after argument on question of law fairly arising in the
case, and necessary to its determination, **is an authority of binding
precedent in the same court** or in other courts of equal or lower rank
in subsequent cases where the very point is again in controversy.
**State v. Mellenberger**, 163 Or. 233, 95 P.2d 709, 719, 720.  Blacks
Law Dictionary 5th Edition pg. 1261.  (Further reference:  Defendants
knowledge of wrongful acts is statutory prerequisite to suit under 42
U.S.C. 1986.  **Buck v. Board of Elections**, (1976, CA. 2, NY) 536 F.2d
522.  Prior, unreviewed state administrative adjudication may have no
preclusive effect on claims subsequently asserted under 42 U.S.C.S.
1981, 1983, 1985, 1986, 1988.  **Elliot v. University of Tennessee**,
(1985, CA. 6 Tenn.) 766 F.2d 982, 38 BNA FEP Cas. 522, 37 CCH EPD
25419, cert. gr. 474 U.S. 788, 92 L.Ed.2d 635, 106 S.Ct. 3220, 41
BNA FEP Cas. 177, 40 CCH EPD 36205).

8.    F.R.C.P. 12(b)(6):  Rule 12 is defenses: Rule 12(b) states with
particularity, "How Presented," every defense in law or fact, to a
claim for relief in any pleading, whether a claim, counter claim,
cross-claim, or third party claim, shall be asserted in the responsive
pleading thereto if one is required, except that the following defense
may at the opinion of the pleader be made Section 8, 12(b)(6): fail-
ure to state a claim upon which relief can be granted.  (Refer Note
7).

not favored.   Ref. Baker v. Cal. Land Title Co., D.C. Cal. 349, F.Supp.
23, 238, 239.   Title VII of the 1964 Civil Rights Act.

17.     Title 18 U.S.C.A. 241: "If two or more persons conspire to
injure, oppress, threaten, or intimidate any citizen in the free ex-
ercise or enjoyment of any right or privileges secured to him by the
Constitution or laws of the United States or because of his having
so exercised the same;" or

    "If two or more persons go in disguise on the highway or on the
premises of another, with intnet to prevent or hinder his free ex-
ercise or enjoyment of any right or privilege so secured."

    "They shall be fined not more than $10,000 or imprisoned more
than ten years, or both."

18.     Title 42 U.S.C.A. Section 1983; every person who, under color
of any statute, ordinance,  regulation, custom or usage, of any State
or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States, or other person within
the jurisdiction thereof to the deprivation of any rights, privileges
or immunities secured by the Constitution and laws, shall be liable
to the party injured in an action at law, suit in equity, or other
proper procedding for redress.

19.     4th Amendment: Unreasonable search and seizures shall not be
violated, and no warrants shall issue, but upon probable cause and
supported by "oath or affirmatin," and particularly describing the
place to be searched and the person or thing to be seized.

20.     Although city is not "person" amendable to action under 42
U.S.C.A. 1986, city officials acting in thier official capacities
are subject to action under this.   Black Bros. Combined Inc. v.
Richmand, 386 F.Supp. 147, 12 BNA FEP Cas 432, 10 CCH EPD 1027, (1974,
ED Va).   If city or other municipal corporation had policy or custom
of refusing or neglecting to prevent violations of 42 U.S.C.A. 1985,
and city's agents, servants, and employees followed that policy or
custom, then city should be held liable under 42 U.S.C.A. 1985.
Vasquez v. Reno, 461 F.Supp. 1098, 21 BNA FEP Cas 1281, 19 CCH EPD
9091, (1978, DC Nev).   Municipality is directly liable under 42
U.S.C.A. 1985(2), 1985(3), and 1986 only where it is shown that de-
privation of rights was pursuant to policy statement, ordinance,
regulation, a decision of an official adopted and promulgated, or

//// - 27

custom, usage.  Bell v. Milwaukee, 536 F.Supp. 462, (1982 ED Wis.)
affd. in part and revd. in part on other grounds (CA 7 Wis) 746 F.2d
1205, 16 Fed Rules Evid. Serv. 279.  (Further reference, 41 ALR 3d
700 Personal liability of policeman, sheriff, or similar peace officer
or his bond for injury suffered as a result of failure to enforce
law or arrest lawbreaker.)

21.    Color of Law: The appearance or semblance without the substance,
of legal right.  State v. Brechler, 185 Wis. 599, 202 N.W. 144, 148
(refer Blacks Law Dictionary 4th Edition, pg. 331)

22.    Ratification: In a broad sense, the confirmation of a previous
act done either by the party himself or another; confirmation of a
voidable act.  Story, ag. subsection 250, 251, 2 Kent. Comm. 237;
McKorton v. Shelby County, 6 S.Ct. 1121, 118 U.S. 435, 30 L.Ed. 178
;Callup v. Fox, 30 A. 756, 64 Conn. 491.  In the law of principal
and agent, the adoption and confirmation by one person with knowledge
of all material fact, of an act or contract performed or entered into
in his behalf by another who at the time assumed without authority
to act as his agent.  Maryland Casualty Co. v. First State Bank of
Delware, 101 Okl. 71, 223 P. 701, 705.  (Refer Blacks Law Dictionary
4th Edition, pg. 1586.)

24.    F.R.C.P. Rule 11: Signing of Pleadings, and other Papers Rep-
resentations to Court; sanctions: 11(b): by presenting to the court
(whether by signing, filing, submitting, or later advocating) a
pleading, written motion, or other paper, an attorney or unrepre-
sented party is certifying that to the best of the persons knowledge
information and belief, formed after an inquiry reasonable under the
circumstances: 11(b)(2): the claims, defenses and other legal con-
tentions therein are warranted by existing law or by a nonfrivilous
argument for the extension, modification, or reversal of existing
law or the establishment of new law.

25.    Fiduciary: A person having a duty, created by an undertaking,
to act primarily for another benefit in matters connected with such
undertaking.  (Refer Blacks Law Dictionary 5th Edition pg. 563.)

       Malice in law is not necessarily personal hate or ill will, but
is the state of mind which is reckless of the law and of the legal
right of the citizen.  (Refer Chrisman v. Terminal R. Ass'n of
St. Louis, 237 Mo. App. 181, 157 S.W.2d 230, 235.)

26.    Fraud: An intnetional perversion of truth, for the purpose
of inducing another in reliance upon it in part with some valuable
thing belonging to him or to surrender a legal right a false repre-
sentation of a matter of fact, whether by words or by conduct, by
false or misleading allegations or by concealment of that which should
have been disclosed, which deceives and is intended to deceive an-
other so that he shall act upon it to his legal injury.  Brainerd
Dispatch Newspaper Co. v. Crow Wing County, 196 Minn. 194, 264 N.W.
779, 780.  Any kind of artifice employed by amperson all multifarious
means which human ingenuity can devise, and which are resorted to
by one individual to get advantage over another by false suggestions
or by suppression of truth and includes all surprise, trick, cunning,
dissembling, and any unfair way by which anotherd.  Johnson v. McDonald
170 Ok;l. 117, 39 P.2d 150.  "Bad Faith" and "Fraud" are synonymous
and also synonymous of dishonesty, indifelity, faithlessness, per-
fidy, infairness, etc.  Joiner v. Joiner, Tex. Civ. App., 87 S.W.2d
903, 914, 915.
NOTE:
    Because everyone is deemed is deemed to know the law, inaccurate
representation regarding legal matters are not generally actionable.
Of course, were one to make a representation regarding a matter of
law that the mis-representer himself knew to be inaccurate, a "fraud"
action would lie.  (Refer White v. Mulvanie, 575 S.W.2d 184 (Mo.
1978))(party's "superior" knowledge of the law)[see note 1 fact and
finding sheet] held to be an exception from general rule that a mis-
representation, synonymous of dishonesty, infidelity, faithlessness,
perfidy, unfairness, etc.  Joiner v. Joiner, Tex. Civ. App., 87 S.W.2d.
903, 914, 915.
NOTE:
    Because everyone is deemed to know the law, inaccurate represent-
ations regarding legal matters are not generally actionable.  Of
course, were one to make a representation regarding a matter of law
that the misrepresenter himself knew to be inaccurate, a "Fraud" action
would lie.  White v. Mulvania, 575 S.W.2d. 184 (Mo. 1978)(party's
"superior" knowledge of the law) held to be an exception against
general rule that a misrepresentation of law is not acceptable.

Whereby, the government's cause against petitioner is premised upon an unlawful application of law:

1. Lack of subject jurisdiction;
2. Lack of jurisdiction over defendant, a citizen party;
3. No Fourth Amendment Search Warrant;
4. Unlawful indictment;
5. Wrongful application of U.S. Codes;
6. Lack of published regulations in the Federal Register;
7. Failing to give notice under due process and denial of due process;
8. Usurpation of power not delegated or legislated;
9. Unauthorized prosecution under Admiralty/Maritime law;
10. and, the denial of the effective assistance of counsel.

## CONCLUSION

In the nature of Rule 201(d) of the Federal Rules of Evidence, the court is compelled to take Judicial Notice of the foregoing, where where it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined.  The Federal Government has no Constitutional of Congressional authority to restrict or compel the activities of private citizens, domiciled without the legislative, territorial or admiralty jurisdiction of the Federal United States. The jurisdiction of the court is limited by and does not exceed that of the Federal Government.  Where the instant matter is concerned, neither the Federal Government or the district court have established, on the record, documented proof that the alleged prohibitive conduct violated a provisions of law.

WHEREFORE, the undersigned respectfully prays that the court will take Judicial Notice of the foregoing and find as a matter of law and fact that the Federal Government lacked  legislative and Subject Matter Jurisdiction.

Dated; _Nov 12,_____, 2007.          Respectfully submitted:

_Lawrence Williams_

UNITED STATES DISTRICT COURT
FOR THE
JUDICIAL DISTRICT OF COLUMBIA

LAWRENCE WILLIAMS,

     Petitioner/Plaintiff,

vs.

ALBERTO GONZALES, ATTORNEY GENERAL
FOR THE "UNITED STATES OF AMERICA,"

and

HARLEY G. LAPPIN, DIRECTOR
OF THE BUREAU OF PRISONS,

     Respondnet(s)/Defendant(s).

No. ▬▬▬▬▬▬

New No. _____

ADMINISTRATIVE
AND
QUASI-JUDICIAL
NOTICE

_____/

COMES NOW, Lawrence Williams, the Petitioner, and submits this
Judicial Notice, to appraise the Court of the following, by and
through said notice:

1.

Subsection §2255, of Title 28 of the United States Code, is
inapplicable and without the force of effect of law where it is shown
not to have been enacted by Congress, into Federal Law. The Con-
gressional Record, Vol. 94-Part 7 (June 15, 1948 to June 19, 1948)
pp. 8229-9169, and Vol. 94-Part 8, (July 26, 1948 to December 31,

08 0681

**FILED**

APR 17 2008

Clerk, U.S. District and
Bankruptcy Courts

///// - 1    Administrative and Quasi-Judicial Notice

1948) pp. 9353, reveal that Congress was not assembled in session on the dates that Title 3, 8, 18, 21, 28 and 48 are purported to have been enacted into law by Congress.

2.

The United States District Court, wherein the cause herein complained of, arose, is shown to be an Executive Tribunal, without Article III judicail authority.  This assertion is supported by consulting Supreme Court Rule 45, The Revised Statutes of 1878, The Judiciary Act of March 3, 1911, Executive Order 6166, **Balzac v. Porto Rico**, (1922).  **Mookine v. United States**, (1938).  Thus, not authorized to entertain the cause now before the court.

3.

Thus, the Court, in similar matters (Common Law Writ of Habeas Corpus), appears to be resorting to inapplicable statutory provisions to remove the cause to a court which the  court knows lacks the authority under Article III to entertain the matter.  Thereby the sustainment of an unlawful conviction and term of imprisonemnt via subterfuge and non-compliance with the law (a Malum in se crime?) whereby the Accused/Petitioner is deprived a remedy in law to redress a grievance.

4.

It is the foregoing, and following reasons that the Petitioner has brought his instant cause under the Common Law Writ of Habeas Corpus, and invoked the venue and jurisdiction of an Article III, Constitutional Court.

5.

It is there incumbent upon this Court, in the interest of justice, by and through this Judicial Notice, as a neutral party between

both Petitioner and Respondents, upon its own motion to issue an
**ORDER TO SHOW CAUSE** TO THE Respondent(s) why a **Writ of Habeas Corpus**
should not issue, in their 'showing' based upon the facts and points
raised in the §2241 and Notice and Demand to Dismiss For Lack of
Criminal Jurisdiction.


Dated: ___N v  7___, 2007.             Respectfully submitted

                                           Lawrence Williams

AO 245 S (Rev. 4/90)(D/Colorado rev.) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of Colorado

UNITED STATES OF AMERICA

    v.

Case Number 94-CR-254-03-M

LAWRENCE WILLIAMS

    Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, LAWRENCE WILLIAMS, was represented by Edward R. Harris.

The defendant has been found not guilty on counts three, four and five of the first superseding indictment and is discharged as to such counts.

The defendant was found guilty on counts one, eleven, twelve, thirteen, fourteen and nineteen of the first superseding indictment after a plea of not guilty. Accordingly, the defendant is adjudged guilty of such counts, involving the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. §§846 and 841(a)(1) and (b)(1)(A)(iii) | Conspiracy to Possess with Intent to Distribute More Than 50 grams of Cocaine Base | 8/19/94 | 1 |
| 21 U.S.C. §§841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. §2 | Distribution of 50 Grams or More of Cocaine Base, Aiding and Abetting | 12/2/93 | 11 |
| 21 U.S.C. §§841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. §2 | Distribution of 50 Grams or More of Cocaine Base, Aiding and Abetting | 12/30/93 | 12 |
| 21 U.S.C. §§841(a)(1) and (b)(1)(C) | Distribution of Cocaine Base | 4/18/94 | 13 |
| 21 U.S.C. §§841 (a)(1) and and (b)(1)(B)(iii) and 18 U.S.C. §2 | Distribution of 5 or more Grams of Cocaine Base, Aiding and Abetting | 5/26/94 | 14 |
| 21 U.S.C. §§841(a)(1), (b)(1)(C) and 18 U.S.C. §2 | Distribution of Cocaine, Aiding and Abetting | 8/11/94 | 19 |

As pronounced on February 16, 1996, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $300.00, for counts one, eleven, twelve, thirteen, fourteen and nineteen, which shall be due immediately.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this _16th_ day of _February_, 19_96_

**FILED**

08 0681   APR 17 2008

Clerk, U.S. District and Bankruptcy Courts

_Richard P. Matsch_
Richard P. Matsch
United States District Judge

B1

EXHIBIT A

I hereby certify that the foregoing is a true copy of the original on file in my office.
ATTEST: a true copy
Court this _20th_ day of _Feb 96_
JAMES R. MANSPEAKER
By _Marks_ Deputy

AO 245 S (Rev. 4/90)(D/Colorado rev.) Sheet 2 - Imprisonment

Case 1:08-cv-00681-HHK    Document 2    Filed 04/17/2008    Page 33 of 62

Judgment--Page 2 of 4

Defendant: LAWRENCE WILLIAMS
Case Number: 94-CR-254-03-M

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 360 months on Counts 1, 11, 12 and 14, and 240 months on Counts 13 and 19, all concurrently.

The defendant is remanded to the custody of the United States Marshal.

The court recommends an appropriate level facility in Colorado.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

B2

AO 245 S (Rev. 4/90)(D/Colorado rev.) Sheet 3 - Supervised Release
Case 1:08-cv-00681-HHK    Document 2    Filed 04/17/2008    Page 34 of 62

Judgment--Page 3 of 4

Defendant: LAWRENCE WILLIAMS
Case Number: 94-CR-254-03-M

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 years on Counts 1, 11, 12 and 14, and 3 years on Counts 13 and 19, concurrently.

While on supervised release, the defendant shall not commit another federal, state, or local crime; shall not illegally possess a controlled substance; shall not possess a firearm or destructive device; shall comply with the standard conditions that have been adopted by this Court (set forth below).

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on supervised release and at least two periodic drug tests thereafter, as directed by the probation officer.

The defendant shall comply with the following additional conditions:

If ordered to the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district in which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer.
2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4) The defendant shall support his or her dependents and meet other family responsibilities.
5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.
7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.
14) The defendant shall provide the probation officer with access to any requested financial information.

B3

Defendant: LAWRENCE WILLIAMS
Case Number: 94-CR-254-03-M

## STATEMENT OF REASONS

**Guideline Range Determined by the Court:**

| | |
|---|---|
| Total Offense Level: | 42 |
| Criminal History Category: | 1 |
| Imprisonment Range: | |
| Counts one, eleven & twelve | 360 months to life |
| Counts thirteen & nineteen | 20 years |
| Count fourteen | 30 years |
| Supervised Release Range: | |
| Counts one, eleven & twelve | 5 years |
| Counts thirteen & nineteen | 3 years |
| Count fourteen | 3 to 5 years |
| Fine Range: | $25,000 to $16,000,000 |
| Restitution: | $ 0 |

The defendant does not have the ability to pay a fine or costs of confinement or supervision.

The court sentenced to the low level because that in itself is an extremely severe penalty.

B4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. **94 - CR - 254**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHNNIE WILLIAMS,
    a/k/a "Pedro", a/k/a "Trips 1",
LAWRENCE WILLIAMS,
    a/k/a "Pierre", a/k/a "Trips 2",
EDDIE WILLIAMS,
    a/k/a "Pete", a/k/a "Trips 3",
FRANK MOORE,
    a/k/a "Pookie", a/k/a "Trips 4",
JOHNNIE WHITE,
    a/k/a "Bam-Bam", a/k/a "Trips 5",
MICHAEL JACKSON,
    a/k/a "Poop", a/k/a "Trips 6",
JEFF MCMILLAN,
    a/k/a "Tim-Dog",
CHANDA LNU,
    a/k/a "Shonda LNU",
GILBERT PITTMAN,
    a/k/a "G-Macc",

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 9 1994

JAMES R. MANSPEAKER
CLERK

---

INDICTMENT
21 U.S.C. §846
21 U.S.C. §841(a)(1) and (b)(1)(A)(iii)
21 U.S.C. §841(a)(1) and (b)(1)(B)(ii), (iii)
18 U.S.C. §924(c)
18 U.S.C. §2

---

COUNT ONE

The Grand Jury charges that:

    From an unknown date, but by at least December, 1989, and continuing until on or about August 19, 1994, in the State and District of Colorado and elsewhere, the defendants, **JOHNNIE**

WILLIAMS, a/k/a "Pedro", a/k/a "Trips 1", LAWRENCE WILLIAMS,
a/k/a "Pierre", a/k/a "Trips 2", EDDIE WILLIAMS, a/k/a "Pete",
a/k/a "Trips 3", FRANK MOORE, a/k/a "Pookie", a/k/a "Trips 4",
JOHNNIE WHITE, a/k/a "Bam-Bam", a/k/a "Trips 5", MICHAEL JACKSON,
a/k/a "Poop", a/k/a "Trips 6", and JEFF MCMILLAN, a/k/a "Tim-
Dog", did knowingly, intentionally and unlawfully conspire,
combine, confederate, cooperate and agree with each other, and
other persons known and unknown to the Grand Jury, to possess
with intent to distribute and to distribute 50 grams and more of
a mixture or substance containing a detectable amount of cocaine
base ("crack" cocaine), a Schedule II controlled substance, in
violation of Title 21, United States Code, Section 841(a)(1) and
(b)(1)(A)(iii).

All in violation of Title 21, United States Code, Section
846.

## COUNT TWO

The Grand Jury charges that:

On or about October 6, 1990, in the State and District of
Colorado, the defendant, EDDIE WILLIAMS, a/k/a "Pete", a/k/a
"Trips 3", did wilfully and unlawfully use one or both of the
following "firearms", as defined in Title 18, United States Code,
Section 921(a)(3), during and in relation to a drug trafficking
crime, namely, the knowing, intentional and unlawful possession
with intent to distribute 5 grams and more of a mixture or
substance containing a detectable amount of cocaine base ("crack"
cocaine), a Schedule II controlled substance, in violation of

2

Title 21, United States Code, Section 841(a)(1):

> One (1) Smith and Wesson Model M629-2 .44 caliber magnum revolver, serial number BBZ 9913, and

> One (1) Ruger Model Mini-14, .223 caliber, semi-automatic rifle, serial number 18325785.

All in violation of Title 18, United States Code, Section 924(c).

## COUNT THREE

The Grand Jury charges that:

On or about October 15, 1991, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully possess with intent to distribute 500 grams and more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United State Code, Section 841(a)(1) and (b)(1)(B)(ii).

## COUNT FOUR

The Grand Jury charges that:

On or about November 19, 1991, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully possess with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United State Code, Section 841(a)(1) and (b)(1)(A)(iii).

3

## COUNT FIVE

The Grand Jury charges that:

On or about November 21, 1991, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully possess with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United State Code, Section 841(a)(1) and (b)(1)(A)(iii).

## COUNT SIX

The Grand Jury charges that:

In or about March, 1992, in the State and District of Colorado, the defendant, **JOHNNIE WHITE**, a/k/a "Bam-Bam", a/k/a "Trips 5", did knowingly, intentionally and unlawfully possess with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii).

## COUNT SEVEN

The Grand Jury charges that:

On or about May 6, 1993, in the State and District of Colorado, the defendant, **MICHAEL JACKSON**, a/k/a "Poop", a/k/a "Trips 6", did knowingly, intentionally and unlawfully possess with intent to distribute a mixture or substance containing a

4

detectable amount of cocaine base ("crack" cocaine), a Schedule
II controlled substance.

All in violation of Title 21, United States Code, Section
841(a)(1).

COUNT EIGHT

The Grand Jury charges that:

On or about May 6, 1993, in the State and District of
Colorado, the defendant, **MICHAEL JACKSON**, a/k/a "Poop", a/k/a
"Trips 6", did wilfully and unlawfully use and carry one or both
of the following "firearms", as defined in Title 18, United
States Code, Section 921(a)(3), during and in relation to a drug
trafficking crime, namely, the knowing, intentional and unlawful
possession with intent to distribute a mixture or substance
containing a detectable amount of cocaine base ("crack" cocaine),
a Schedule II controlled substance, in violation of Title 21,
United States Code, Section 841(a)(1):

> One (1) Walther, Model PPKS, 9mm semi-automatic pistol,
> serial number 2394475, and
>
> One (1) Star, 9mm caliber semi-automatic pistol, serial
> number 1902063.

All in violation of Title 18, United States Code, Section
924(c).

COUNT NINE

The Grand Jury charges that:

On or about September 9, 1993, in the State and District of
Colorado, the defendant, **MICHAEL JACKSON**, a/k/a "Poop", a/k/a
"Trips 6", did knowingly, intentionally and unlawfully possess

5

with intent to distribute a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

COUNT TEN

The Grand Jury charges that:

On or about December 2, 1993, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully distribute, and cause, aid and abet the knowing, intentional and unlawful distribution of, 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii), and Title 18, United States Code, Section 2.

COUNT ELEVEN

The Grand Jury charges that:

On or about December 30, 1993, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully distribute, and cause, aid and abet the knowing, intentional and unlawful distribution of, 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

6

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii), and Title 18, United States Code, Section 2.

### COUNT TWELVE

The Grand Jury charges that:

On or about April 18, 1994, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS,** a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully distribute a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT THIRTEEN

The Grand Jury charges that:

On or about May 26, 1994, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS,** a/k/a "Pierre", a/k/a "Trips 2", did knowingly, intentionally and unlawfully distribute 5 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1), and (b)(1)(B)(iii).

### COUNT FOURTEEN

The Grand Jury charges that:

On or about June 29, 1994, in the State and District of Colorado, the defendant, **GILBERT PITTMAN,** a/k/a "G-Macc", did

7

knowingly, intentionally and unlawfully distribute 5 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(iii).

### COUNT FIFTEEN

The Grand Jury charges that:

On or about July 7, 1994, in the State and District of Colorado, the defendant, **GILBERT PITTMAN**, a/k/a "G-Macc", did knowingly, intentionally and unlawfully possess with intent to distribute 5 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(iii).

### COUNT SIXTEEN

The Grand Jury charges that:

On or about July 8, 1994, in the State and District of Colorado, the defendant, **JEFF MCMILLAN**, a/k/a "Tim-Dog", did knowingly, intentionally and unlawfully possess with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii).

8

## COUNT SEVENTEEN

The Grand Jury charges that:

On or about July 8, 1994, in the State and District of Colorado, the defendant, **JEFF MCMILLAN**, a/k/a "Tim-Dog", did wilfully and unlawfully use and carry the following "firearm", as defined in Title 18, United States Code, Section 921(a)(3), during and in relation to a drug trafficking crime, namely, the knowing, intentional and unlawful possession with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii):

One (1) Ruger P-85 9mm semi-automatic pistol, serial number 303-52899.

All in violation of Title 18, United States Code, Section 924(c).

## COUNT EIGHTEEN

The Grand Jury charges that:

On or about August 11, 1994, in the State and District of Colorado, the defendant, **LAWRENCE WILLIAMS**, a/k/a "Pierre", a/k/a "Trips 2", and **CHANDA LNU**, a/k/a "Shonda" LNU, did knowingly, intentionally and unlawfully distribute, and cause, aid and abet the distribution of, a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

9

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

A TRUE BILL:

_Nick A. Spato_
FOREPERSON

HENRY L. SOLANO
United States Attorney

_Craig F. Wallace_
By:  CRAIG F. WALLACE
Assistant/U.S. Attorney

_Robert T. Kennedy_
By:  ROBERT T. KENNEDY
Assistant U.S. Attorney
Drug Task Force Coordinator

10

# PARALLEL TABLE OF AUTHORITIES AND RULES

The following table lists rulemaking authority (except 5 U.S.C. 301) for regulations codified in the *Code of Federal Regulations*. Also included are statutory citations which are noted as being interpreted or applied by those regulations.

The table is divided into four segments: United States Code citations, United States Statutes at Large citations, public law citations, and Presidential document citations. Within each segment the citations are arranged in numerical order:

For the United States Code, by title and section;
For the United States Statutes at Large, by volume and page number;
For public laws, by number; and
For Presidential documents (Proclamations, Executive orders, and Reorganization plans), by document number.

Entries in the table are taken directly from the rulemaking authority citation provided by Federal agencies in their regulations. Federal agencies are responsible for keeping these citations current and accurate. Because Federal agencies sometimes present these citations in an inconsistent manner, the table cannot be considered all-inclusive.

The portion of the table listing the United States Code citations is the most comprehensive, as these citations are entered into the table whenever they are given in the authority citations provided by the agencies. United States Statutes at Large and public law citations are carried in the table only when there are no corresponding United States Code citations given.

This table is revised as of January 1, 1998.

08 0681

**FILED**

APR 1 7 2008

Clerk, U.S. District and
Bankruptcy Courts

[EXHIBIT B]

EXHIBIT B

# CFR Index

| 16 U.S.C.—Continued | CFR |
|---|---|
| | 355, 356, 360 |
| | 50 Parts 11, |
| | 12, 14, 17, 24 |
| 1561 et seq | 50 Part 227 |
| 1603 | 36 Part 200 |
| 1604 | 36 Part 219 |
| 1606 | 7 Part 701 |
| 1608—1610 | 23 Part 660 |
| 1612 | 36 Part 216 |
| 1612 note | 36 Part 215 |
| 1613 | 36 Part 219 |
| 1620 | 7 Part 1 |
| 1704 | 43 Part 26 |
| 1801 et seq | 50 Parts 268, |
| | 300, 600, 622, 630, 640, 644, 648, 649, |
| | 654, 660, 662, 674, 678, 679 |
| 1801—1882 | 15 Part 904 |
| 1851 note | 15 Part 904 |
| | 50 Part 697 |
| 1853 | 15 Part 905 |
| | 50 Part 605 |
| 1901 et seq | 36 Part 9 |
| 1901—1912 | 43 Part 3830 |
| 1907 | 43 Part 3830 |
| 2001—2645 | 18 Part 290 |
| 2001—2009 | 7 Part 601 |
| 2101 et seq | 36 Part 200 |
| 2101—2111 | 7 Part 701 |
| 2103b | 36 Part 230 |
| 2114 | 36 Part 230 |
| 2201—2205 | 7 Part 701 |
| 2203—2205 | 7 Part 601 |
| 2203 | 7 Part 624 |
| 2309 | 16 Part 455 |
| 2401 et seq | 45 Part 672 |
| | 40 Part 8 |
| 2401—2412 | 15 Part 904 |
| | 45 Part 670 |
| 2401 | 45 Part 670 |
| 2403 | 40 Part 8 |
| 2405 | 45 Part 671 |
| 2431 et seq | 50 Part 300 |
| 2431—2444 | 15 Part 904 |
| 2501—2514 | 36 Part 72 |
| 2601—2645 | 18 Parts 2—4, |
| | 32—35, 37, 41, 45, 46, 101, 116, 131, |
| | 141, 154, 281, 286, 290, 292, 375, 381, |
| | 382, 385 |
| 2901 | 50 Part 83 |
| 3101 et seq | 36 Parts 9, 13 |
| | 43 Parts 36, |
| | 3000, 3110, 3120, 3150 |
| | 50 Part 36 |
| 3101—3126 | 36 Part 242 |
| | 50 Part 100 |
| 3124 | 43 Part 2090 |
| 3142 | 50 Part 37 |
| 3170 | 36 Part 251 |
| 3197 | 36 Part 13 |
| 3210 | 36 Part 251 |
| 3371 et seq | 50 Parts 10—12, 14 |
| 3371—3378 | 15 Part 904 |
| | 50 Parts 10, 14, 300 |
| 3372 | 25 Part 244 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| | 50 Part 13 |
| 3501 et seq | 13 Part 116 |
| 3601—3608 | 15 Part 904 |
| 3631 et seq | 50 Part 674 |
| 3631—3644 | 15 Part 904 |
| 3636 | 50 Part 300 |
| 3801 et seq | 7 Part 12, 601 |
| 3801 | 7 Part 610 |
| 3834 | 7 Part 1400 |
| 3837 et seq | 7 Part 1467 |
| 3837—3837f | 7 Part 623 |
| 3839aa—3839aa–8 | 7 Part 1466 |
| 3841—3844 | 7 Part 12 |
| 3843 | 7 Part 614 |
| 3844 | 7 Part 1940 |
| 3901 et seq | 50 Part 25 |
| 4101 et seq | 50 Part 253 |
| 4201—4245 | 50 Part 17 |
| 4223—4244 | 50 Part 14 |
| 4301—4309 | 36 Part 290 |
| | 43 Part 37 |
| 4601–6a | 36 Part 291 |
| 4901—4916 | 50 Parts 13, 14 |
| 5101 et seq | 50 Part 697 |
| 5501 et seq | 50 Part 300 |

| 17 U.S.C. | |
|---|---|
| 101 | 19 Part 133 |
| 111 | 37 Parts 801, 803 |
| 116 | 37 Part 254 |
| 118 | 37 Part 253 |
| 119 | 37 Part 257, 258 |
| 509 | 28 Part 9 |
| 601—603 | 19 Part 133 |
| 702 | 37 Parts 201—204, |
| | 211, 256, 310 |
| 801—803 | 37 Part 251 |
| 801 | 37 Parts 252—255, 304 |
| 802 | 37 Parts 256, 310 |
| 803 | 37 Parts 252, 253, 255 |
| 804 | 37 Part 306 |
| 908 | 37 Part 211 |
| 1007 | 37 Part 259 |

| 18 U.S.C. | |
|---|---|
| 13 | 32 Parts 210, 263, 1290 |
| | 39 Part 232 |
| 42—44 | 50 Part 11 |
| 42 | 19 Part 12 |
| | 50 Parts 10, 13, 14, 16 |
| 43—44 | 50 Part 12 |
| 47 | 43 Part 4700 |
| 109 | 21 Part 41 |
| 201—212 | 24 Part 0 |
| 201—209 | 12 Part 511 |
| | 29 Part 2202 |
| | 32 Part 1293 |
| 201 | 19 Part 161 |
| 201 note | 20 Part 360 |
| 202 | 14 Part 300 |
| 203 | 7 Part 1 |
| | 31 Part 8 |
| 205 | 7 Part 1 |
| | 14 Part 300 |
| | 31 Part 8 |

## CFR Index

| 18 U.S.C.—Continued | CFR |
|---|---|
| 3622 | 28 Part 553 |
| 3624 | 28 Part 553 |
| 3624 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540, 541—545, 547—552, 570, 571 |
| 3663 | 28 Part 545 |
| 4001—4002 | 28 Part 26 |
| 4001 | 28 Parts 500, 501, 503—505, 511—513, 522—524, 527, 540—543, 545, 547—553, 570—572 |
| 4001 note | 28 Part 505 |
| 4003 | 28 Parts 503, 504 |
| 4005 | 28 Parts 549, 551 |
| 4012 | 28 Part 511 |
| 4042 | 28 Parts 66, 67, 70, 500, 501, 503—505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570—572 |
| 4044 | 28 Part 504 |
| 4045 | 28 Part 549 |
| 4046 | 28 Part 524 |
| 4081—4082 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—545, 547—550, 552, 553, 570—572 |
| 4081 | 28 Part 504 |
| 4100—4115 | 28 Part 527 |
| 4126 | 28 Parts 301, 302, 345, 545, 553 |
| 4161—4166 | 28 Parts 501, 522, 523, 527, 541, 544, 550, 570, 571 |
| 4162—4165 | 28 Part 551 |
| 4201—4218 | 28 Parts 527, 571 |
| 4203—4204 | 28 Part 2 |
| 4203 | 13 Part 102 |
| | 28 Part 16 |
| 4205 | 28 Part 572 |
| 4241—4247 | 28 Part 549 |
| 4251—4255 | 28 Part 550 |
| 4351—4353 | 28 Parts 66, 67, 69, 70 |
| 5003 | 28 Part 527 |
| 5006—5024 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 542, 543, 545, 547—550, 553, 570, 571 |
| 5006—5014 | 28 Part 541 |
| 5006 | 28 Part 552 |
| 5015 | 28 Parts 543, 551, 572 |
| 5016—5024 | 28 Part 541 |
| 5017 | 28 Part 2 |
| 5024 | 28 Part 552 |
| 5031—5042 | 28 Part 571 |
| 5039 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570, 572 |
| 5041 | 28 Part 2 |
| 6002 | 14 Part 13 |
| | 16 Parts 2—4 |
| 6004 | 16 Parts 2—4 |

**19 U.S.C.**

| | |
|---|---|
| 2 | 19 Part 101 |
| 54 | 19 Part 24 |
| 58a—58c | 19 Part 24 |
| 58b | 19 Parts 101, 122 |
| 58c | 19 Part 111 |

| 19 U.S.C.—Continued | CFR |
|---|---|
| 7, 10—12, 18, 19, 24, 54, 101—103, 111—115, 118, 122, 123, 125, 127, 128, 132—134, 141—148, 151, 152, 158, 159, 161, 162, 171—177, 181, 191, 192 | |
| 81a—81u | 15 Part 400 |
| | 19 Parts 146, 147 |
| 81a—81b | 15 Part 400 |
| 81c | 19 Part 191 |
| | 27 Parts 19, 25, 250, 251, 252 |
| 81f | 15 Part 400 |
| 81j | 15 Part 400 |
| 81f—81s | 19 Part 158 |
| 197—198 | 19 Part 158 |
| 288 | 19 Part 4 |
| 289 | 19 Part 4 |
| 293—294 | 19 Part 4 |
| 482 | 19 Part 162 |
| 794 | 32 Part 1906 |
| 1202 | 7 Parts 6, 1530 |
| | 9 Part 151 |
| | 15 Parts 30, 301, 315 |
| | 19 Parts 7, 10, 12, 18, 19, 24, 54, 101, 102, 111, 114, 125, 128, 132, 134, 141, 145—148, 151, 152, 177, 181, 191 |
| | 27 Parts 251, 252 |
| | 50 Parts 10, 13, 15 |
| 1202 note | 7 Part 6 |
| | 14 Part 1214 |
| | 15 Part 303 |
| | 19 Part 351 |
| 1303 | 19 Parts 12, 207, 353 |
| 1303 note | 19 Part 351 |
| 1304 | 19 Part 134 |
| 1305 | 19 Parts 12, 145 |
| 1306 | 7 Part 330 |
| | 9 Parts 92—94, 98, 130 |
| 1307 | 19 Part 12 |
| 1309 | 19 Parts 10, 191 |
| | 27 Part 252 |
| 1311—1312 | 19 Parts 19, 125 |
| 1311 | 19 Part 151 |
| | 21 Part 1220 |
| | 27 Part 19, 252 |
| 1313 | 19 Parts 10, 191 |
| 1315 | 19 Parts 141, 145, 152 |
| 1317 | 19 Part 10 |
| 1321 | 19 Parts 10, 128, 145, 148 |
| 1322—1333 | 19 Part 18 |
| 1322 | 19 Parts 4, 123 |
| 1331 | 19 Part 201 |
| 1333 | 19 Parts 201, 210 |
| 1335 | 19 Parts 200—202, 204—206, 210, 213 |
| 1336 | 19 Part 207 |
| 1337 | 19 Parts 12, 210 |
| 1339 | 19 Part 213 |
| 1342 | 19 Part 210 |
| 1365 | 7 Part 1530 |
| 1401a | 19 Parts 10, 141, 152 |
| 1402 | 19 Parts 10, 141 |
| 1411—1414 | 19 Part 101 |
| 1431—1435 | 19 Part 4 |
| | 16 Parts 102, 103, 162 |

Authorities

| U.S.C.—Continued | CFR |
|---|---|
| | 11 Part 7 |
| | 12 Parts 400, 933, 2434, 2637 |
| | 14 Parts 300, 1207 |
| | 15 Part 0 |
| | 16 Part 1030 |
| | 17 Part 140 |
| | 19 Part 200 |
| | 22 Parts 18, 223, 525, 710 |
| | 28 Part 45 |
| | 29 Part 0 |
| | 31 Part 15 |
| | 36 Part 905 |
| | 39 Part 956 |
| | 41 Part 105–735 |
| | 45 Parts 73b, 500 |
| | 46 Parts 500, 502 |
| | 49 Part 98 |
| 208 | 5 Part 2640 |
| | 10 Part 1010 |
| | 12 Part 264a |
| | 15 Part 0 |
| | 16 Part 5 |
| | 18 Part 1301 |
| | 22 Part 606 |
| | 29 Parts 0 |
| | 34 Part 73 |
| | 45 Part 680 |
| | 46 Part 500 |
| 219 | 32 Part 516 |
| 223 | 28 Part 524 |
| 241 note | 24 Part 573 |
| 437 | 25 Part 140 |
| 474 | 31 Parts 402, 405 |
| 474A | 31 Part 601 |
| 492 | 31 Parts 101, 402, 403 |
| | 28 Part 9 |
| 512 | 19 Parts 145, 161 |
| 545 | 19 Part 162 |
| 546 | 19 Part 191 |
| 550 | 12 Part 4 |
| 641 | 43 Part 8200 |
| | 49 Part 801 |
| 701 | 32 Part 507 |
| | 50 Part 80 |
| 702 | 32 Part 507 |
| 707 | 7 Part 8 |
| 711 | 36 Part 271 |
| 751—752 | 28 Part 511 |
| 751 | 28 Part 570 |
| 798 | 32 Parts 322, 518 |
| 799 | 14 Parts 1203a, 1214 |
| 831—835 | 49 Parts 392, 396, 398 |
| 831—833 | 49 Part 397 |
| 834 | 49 Part 178 |
| 835 | 49 Part 397 |
| 847 | 27 Parts 55, 178 |
| 921—928 | 27 Part 178 |
| 921 | 27 Part 72 |
| 926 | 27 Part 200 |
| 951 | 28 Part 73 |
| 981 | 28 Part 9 |
| | 39 Part 233 |
| 982 | 28 Part 9 |
| 1001 | 7 Part 1443 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| 1001 ff | 38 Part 21 |
| 1017 | 36 Part 701 |
| 1114 | 28 Part 64 |
| 1116 | 22 Part 2 |
| 1159 | 25 Part 309 |
| 1261 | 27 Part 72 |
| 1382 | 32 Parts 527, 552, 770 |
| 1467 | 28 Part 9 |
| 1512 | 28 Part 551 |
| 1693—1699 | 39 Parts 310, 320 |
| 1752 | 31 Part 408 |
| 1791—1792 | 28 Part 511 |
| 1791 | 28 Parts 6, 540 |
| 1793 | 28 Part 511 |
| 1851—1861 | 43 Part 9260 |
| 1851—1858 | 43 Part 9230 |
| 1905—1906 | 12 Part 4 |
| 1905 | 19 Part 103 |
| | 20 Part 402 |
| | 21 Part 20 |
| | 45 Part 5 |
| | 28 Part 9 |
| 1955 | 39 Part 233 |
| 1956—1957 | 28 Part 9 |
| 1963 | 49 Part 801 |
| 2071 | 32 Part 761 |
| 2152 | 28 Part 9 |
| 2253 | 28 Part 9 |
| 2254 | 39 Part 233 |
| 2257 | 28 Part 75 |
| 2332d | 31 Parts 500, 515, 535, 550, 560, 575, 596 |
| 2341—2346 | 27 Part 296 |
| 2386 | 28 Part 10 |
| 2510 et seq | 15 Parts 730, 738, 742, 774 |
| 2513 | 28 Part 9 |
| 3001 note | 28 Part 42 |
| 3013 | 28 Part 545 |
| 3050 | 28 Part 511 |
| 3056 | 31 Parts 409, 413 |
| 3059 | 28 Part 7 |
| 3061 | 39 Parts 232, 233 |
| 3401—3402 | 32 Part 1290 |
| 3401 | 28 Part 52 |
| | 32 Part 516 |
| 3496 | 22 Part 92 |
| 3500 | 32 Part 518 |
| 3521—3528 | 28 Part 524 |
| 3551 et seq | 43 Part 9260 |
| 3551—3586 | 36 Part 242 |
| | 50 Part 100 |
| 3559 | 10 Part 860 |
| | 42 Part 72 |
| 3565 | 28 Parts 527, 571 |
| 3568—3569 | 28 Part 571 |
| 3568 | 28 Part 523 |
| 3569 | 28 Part 527 |
| 3571 | 10 Parts 860, 1048 |
| | 28 Part 545 |
| | 42 Part 72 |
| | 28 Part 571 |
| 3582 | 28 Part 571 |
| 3621—3622 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540, 541—545, 547—552, 570, 571 |
| 3621 | |

Reorganization Plan—Continued CFR

45 Parts 7, 16, 204
1953 Plan No. 2 .......................7 Part 2
1953 Plan No. 1 ..................32 Part 185
46 Parts 345—347
1961 Plan No. 3.......................14 Parts 213,
216, 247, 384, 385
1961 Plan No. 6 .....................12 Parts 501, 933
1961 Plan No. 7..........................46 Parts 202,
206, 207, 251, 276, 280, 283, 294, 309,
310, 331, 381, 385, 390, 391, 501, 585,
586
1965 Plan No. 1 ........................19 Part 101
1965 Plan No. 2 ........................15 Part 903
1968 Plan No. 2 ........................24 Parts 1, 2
49 Part 601
1968 Plan No. 3 ....................40 Parts 180, 190
1970 Plan No. 2.........................41 Part 101-37
1970 Plan No. 3 ..........................21 Part 193
40 Parts 2,
112, 121, 160, 177—179, 190, 194
1970 Plan No. 4 ..............................15 Part 950
50 Parts 251, 254, 260
1973 Plan No. 1 ............................31 Part 9

Reorganization Plans—Continued CFR

45 Parts 345—347
1977 Plan No. 2 ...................22 Parts 504,
514—518
1978 Plan No. 1 .....................29 Parts 1614,
1620, 1621, 1625—1627, 1690
1978 Plan No. 2 .......................5 Parts 177,
179, 1250—1255
1978 Plan No. 3 ..........................44 Parts 1, 2,
5—15, 18, 59—68, 70—73, 75, 77, 78,
80—83, 150—152, 206, 222, 300—304,
306, 308, 312, 320, 321, 323, 324; 327—
331, 350, 351, 360, 361
48 Parts 4401—4403,
4405, 4406, 4408, 4409, 4412, 4414—
4417, 4419, 4424, 4426, 4429, 4432, 4433,
4435, 4436, 4452,
1978 Plan No. 4 .........................29 Parts 2510,
2550, 2570
1979 Plan No. 1 .........................10 Parts 1500,
1502, 1504, 1530, 1534
1979 Plan No. 3,...................15 Parts 705, 2009
1980 Plan No. 1 ...............................10 Part 1



Office of the Attorney General
Washington, D. C. 20530

March 20, 1997

RECEIVED

MAR 27 1997

OFFICE OF THE GOVERNOR

BY CERTIFIED MAIL

The Honorable Gary Locke
Governor of Washington
P.O. Box 40002
Olympia, WA  98504

Dear Governor Locke:

On behalf of the United States, I hereby accept concurrent
legislative jurisdiction over the site of a Federal Bureau of
Prisons facility, near Seattle and Tacoma, Washington, to be used
for prisoner detention, correction, and other purposes.  As you
may know, construction of the facility, presently known as FDC
Seatac, is well under way.  The facility is soon expected to
begin operations.

The State of Washington has consented to the acquisition by
the United States of land acquired for federal purposes, see
Wash. Rev. Code Ann. § 37.04.010, and has ceded concurrent
criminal and civil legislative jurisdiction over such land to the
United States for all purposes for which the United States
acquired the land, see Wash. Rev. Code Ann. § 37.04.020, see also
Department of Labor and Industries v. Dirt & Aggregate, Inc., 120
Wash.2d 49, 52-53, 837 P.2d 1018, 1021 (Wash. 1992) (holding that
the state may cede legislative jurisdiction to the United States,
and that the scope of the federal jurisdiction is governed by the
terms of the cession).

Federal law provides that a state's cession of legislative
jurisdiction to the United States does not take effect until
accepted by the head of the federal department that has custody
over the land.  40 U.S.C. § 255.  This letter constitutes the
United States' acceptance of concurrent criminal and civil
jurisdiction over the site of the facility.  Copies of the

08 0681

**FILED**

APR 1 7 2008

**Clerk, U.S. District and
Bankruptcy Courts**

[EXHIBIT C]



The Honorable Gary Locke
Page 2

Declaration of Taking and general warranty deeds for the site are
enclosed.

Concurrent legislative jurisdiction will mutually benefit
the State of Washington and the United States.  Absent federal
legislative jurisdiction, the state would have the entire burden
of prosecuting offenses that might be committed at the facility,
except those offenses that violate federal law even when
committed outside areas of federal legislative jurisdiction.
Concurrent jurisdiction enables the United States to investigate
and prosecute certain offenses when appropriate, without
displacing state authorities.  Criminal offenses perpetrated by
or against federal prisoners confined at the institution can be
investigated by the Federal Bureau of Investigation and
prosecuted by the United States Attorney.  Thus, cession of
concurrent jurisdiction may relieve the State of some of the
burden of investigating and prosecuting criminal offenses that
occur at the federal institution.  In some situations, it might
be more appropriate for the State to investigate and prosecute
violations of state law, and the State could do so.

Please execute the acknowledgment of receipt of this letter
on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390.

Should you need any further information, please have your staff
contact Mr. Wall on (202) 514-1442, or Jeffrey J. Limjoco, an
attorney with the Federal Bureau of Prisons, on (202) 307-1240.

The Honorable Gary Locke
Page 3

I appreciate your assistance in this important area of federal-state cooperation.

Sincerely,

Janet Reno

Enclosures

Receipt of the above notice of acceptance of concurrent legislative jurisdiction over the site of the Federal Detention Center near Seattle and Tacoma, Washington (FDC Seatac) is hereby acknowledged this 11th day of April _____, 1997.

Governor of Washington



**Office of the Attorney General**

**Washington, D. C. 20530**

MAY - 6 1997

OFFICE OF THE
GOVERNOR

May 1, 1997

BY CERTIFIED MAIL

The Honorable Frank Keating
Governor of Oklahoma
Oklahoma City, Oklahoma   73105

Dear Governor Keating:

On behalf of the United States, I hereby accept concurrent
legislative jurisdiction over the land that presently is the site
of the Federal Transfer Center (FTC) in Oklahoma City.

The State of Oklahoma recently enacted Senate Bill No. 283
to cede to the United States concurrent legislative jurisdiction
over the FTC site. That bill, styled "An Act Relating to the
United States; Ceding Concurrent Jurisdiction Over Certain Real
Property to the United States; Reserving Concurrent Jurisdiction
For Certain Purposes; Providing for the Termination of Such
Jurisdiction; Providing for Codification; and Declaring an
Emergency," was signed by you on April 9, 1997.   Section 1 of the
Bill provides, in relevant part:

> Notwithstanding any other provision of law, concurrent
> jurisdiction is hereby ceded to the United States over the
> tract of land comprised and any tracts of land hereafter
> comprised within the limits of the Oklahoma City Federal
> Transfer Center, a facility which is leased to the
> United States and located at Will Rogers World Airport in
> Oklahoma City, County of Oklahoma. . . . The jurisdiction
> so ceded shall continue no longer than the United States
> shall lease or own such lands or portions thereof.

Federal law provides that a state's cession of legislative
jurisdiction to the United States does not take effect until
accepted by the head of the federal department that has custody
for the land.  40 U.S.C. § 255.   This latter constitutes the
United States' acceptance of concurrent criminal and civil
legislative jurisdiction over the tracts of land presently
comprised within the limits of the FTC.  Enclosed is a copy of
a property description for the land over which the
United States accepts concurrent jurisdiction.

The Honorable Frank Keating
Page 2

Please execute the acknowledgment of receipt of this letter
n the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390

ould you need any further information, please have your staff
ntact Mr. Wall on (202) 514-1442, or Jane Crowell, an attorney
th the Federal Bureau of Prisons, on (202) 307-1240.

I appreciate your assistance in this important area of
deral-state cooperation.

Sincerely,

Janet Reno

losure

ipt of the above notice of acceptance of concurrent
slative jurisdiction over the site of the Federal Transfer
ar in Oklahoma City, Oklahoma, is hereby acknowledged this
day of _____ May _____, 199 7.

Governor of Oklahoma

EXHIBIT (d)


Evidentiary Hearing
[not submitted]


08 0681

**FILED**

APR 17 2008

Clerk, U.S. District and
Bankruptcy Courts

[EXHIBIT d]



UNITED STATES · OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS
SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948
(PAGES 9353 TO 10316)

08 0681

**FILED**

APR 1 7 2008

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 19



EXHIBIT E

Exhibit II

Congressional Record Volume 94 – part -8

# Congressional Record

United States
of America

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

XCIV——596

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
Secretary of State.

## CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota (Mr. BALL), the Senator from Ohio (Mr. BRICKER), the Senator from Delaware (Mr. BUCK), the Senator from South Dakota (Mr. BUSHFIELD), the Senator from Vermont (Mr. FLANDERS), the Senator from Oregon (Mr. MORSE), and the Senator from Iowa (Mr. WILSON) are necessarily absent.

The Senator from New Hampshire (Mr. BRIDGES) is detained on official business.

The Senator from Idaho (Mr. DWORSHAK) is absent on official state business.

The Senator from New York (Mr. IVES) is absent because of illness in his family.

The Senator from Nevada (Mr. MALONE) is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico (Mr. CHAVEZ) is unavoidably detained.

The Senator from Arkansas (Mr. FULBRIGHT), the Senator from Nevada (Mr. McCARRAN), the Senator from Tennessee (Mr. McKELLAR), the Senator from Maryland (Mr. TYDINGS), and the Sena-

tor from New York (Mr. WAGNER) are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

## THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

## ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co., and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

9755

Congressional
Record

VOL. 94
PART 8
PAGES 9353 TO 10316

30TH CONGRESS
2D SESSION
JULY 26, 1948
TO
DECEMBER 31, 1948

UNITED STATES  OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80*th* CONGRESS

SECOND SESSION

## VOLUME 94—PART 7

JUNE 15, 1948, TO JUNE 19, 1948
(PAGES 8229 TO 9352)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

CH. 301   GENERAL PROVISIONS    18 § 4001

## WESTLAW COMPUTER ASSISTED LEGAL RESEARCH

WESTLAW supplements your legal research in many ways   WESTLAW allows you to

• update your research with the most current information

• expand your library with additional resources

• retrieve current, comprehensive history citing references to a case with KeyCite

For more information on using WESTLAW to supplement your research, see the WESTLAW Electronic Research Guide, which follows the Explanation.

---

## § 4001. Limitation on detention; control of prisons

(a) No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

(b)(1) The control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws, the Classification Act, as amended and the applicable regulations.

(2) The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation.

(June 25, 1948, c. 645, 62 Stat. 847; Sept. 25, 1971, Pub L. 92-128, § 1(a), (b), 85 Stat. 347.)

### HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports the Director of Bureau of Prisons. June
1948 Act. Based on Title 18, U.S.C., 19, 1944. 80th Congress House Report
1934 ed. §§ 741 and 753e (Mar. 3, 1891, No. 304.
c. 529, §§ 1, 4, 26 Stat. 839; May 14,   1971 Acts. House Report No 92-116,
1930. c. 274, § 1, 46 Stat. 326).   see 1971 U.S. Code Cong and Adm
This section consolidates said sections News, p 1435
741 and 753e with such changes of lan-   References in Text
guage as were necessary to effect consoli-   The civil-service laws, referred to in
dation.   subsec. (b)(1), are set forth in Title 5,
"The Classification Act, as amended."   Government Organization and Employ-
was inserted more clearly to express the ees. See, particularly, section 3301 et
existing procedure for appointment of of-   seq. of that Title.
ficers and employers as noted in letter of   11

---

PRISONS AND PRISONERS   Part 3

### HISTORICAL AND STATUTORY NOTES

Amendments
1990 Amendments. Pub L. 101-647,
Title XXXV, § 3597, Nov 29, 1990, 104
Stat. 4931, added items 306 and 319

1984 Amendments Pub L. 98-473, Ti-
tle II, § 218(f)(1), Oct. 12, 1984, 98 Stat.
2027, in item 309 and 311 substituted
"Repealed" for "Good time allowances"
and "Parole", respectively.

stituted "Offenders with mental disease
or defect" for "Mental defectives"

1966 Amendments Pub L. 89-793, Ti-
tle VI, § 601, Nov 8, 1966, 80 Stat. 1850,
added item 314 "Narcotic addicts"

Effective and Applicability Provisions
For applicability of sentencing provi-
sions to offenses, see Effective Date and
Savings Provisions, etc. note, section 235
of Pub L. 98-473, as amended, set out
under section 3551 of this title.

Savings Provisions
See section 235 of Pub L. 98-473, That
II, c. II, Oct. 12, 1984, 98 Stat. 2031, as
amended, set out as a note under section
3551 of this title.

## CHAPTER 301—GENERAL PROVISIONS

Sec.
4001. Limitation on detention; control of prisons
4002. Federal prisoners in State institutions; employment.
4003. Federal institutions in States without appropriate facilities.
4004. Oaths and acknowledgments.
4005. Medical relief; expenses.
4006. Subsistence for prisoners.
4007. Expenses of prisoners.
4008. Transportation expenses
4009. Appropriations Sites and buildings.
4010. Acquisition of additional land
4011. Disposition of cash collections for meals, laundry, etc.
4012. Summary seizure and forfeiture of prison contraband.
4013. Support of United States prisoners in non-Federal institutions.
4014. Testing for human immunodeficiency virus

### HISTORICAL AND STATUTORY NOTES

Amendments
1998 Amendments Pub L. 105-370,
§ 2(b), Nov. 12, 1998, 112 Stat. 3375,
added item 4014

1990 Amendments Pub L. 101-647,
Title XXXV, § 3597(1), (2), Nov 29, 1990,
104 Stat. 4931, added item for chapter
319

1988 Amendments Pub L. 100-690,
Title VII, § 7608(d)(2), Nov 18, 1988,
102 Stat. 4517, added item 4013

1984 Amendments Pub L. 98-473, Ti-
tle II, § 1109(d), Oct. 12, 1984, 98 Stat
2148, added item 4012.

1971 Amendments Pub.L. 92-128
§ 1(a), Sept. 25, 1971, 85 Stat. 347, sub-
stituted "Limitation on detention. control
of prisons" for "Control by Attorney Gen-
eral" in item 4001.

1966 Amendments. Pub.L. 89-554,
§ 3(a), Sept 6, 1966, 80 Stat. 610, added
items 4010 and 4011

10